UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

LEOPARD SOLUTIONS LLC,

                Plaintiff,

v.

MURRAY LOVE,
LEGALIST, INC.,
XYZ COMPANIES and
JOHN OR JANE DOES 1-10,

                Defendants.

- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- --X

Index No. 21-10264

JURY DEMANDED

**COMPLAINT**

    Plaintiff Leopard Solutions LLC ("Plaintiff" or "Leopard Solutions"), by and through its undersigned counsel, as and for its Complaint against Murray Love ("Love"), Legalist, Inc. ("Legalist"), XYZ Companies and John or Jane Does 1-10 alleges as follows:

**NATURE OF ACTION**

    1.    Leopard Solutions, a leading content provider of information on attorneys and the legal industry, brings this action against Love and Legalist, a litigation funding company, to seek recourse for Love's willful misappropriation of Plaintiff's confidential and proprietary content. In August 2021, Love, an officer of Legalist, contacted Leopard Solutions regarding purchasing a subscription to Leopard Solutions' database platform and was granted access to Leopard Solutions' proprietary database on a free trial basis in order to view Leopard Solutions' system before purchasing a subscription. Such access was provided to Love on the condition that no downloads of any content were allowed. However, once he gained access to Leopard Solutions' system, Love formulated a deliberate plan to copy nearly all of the information in Leopard

Solutions' database for his and Legalist's benefit.  As part of this scheme, Love circumvented Leopard Solutions' security features and copied enormous swaths of Leopard Solutions' proprietary content.  Accordingly, Plaintiff brings this action for breach of contract, unjust enrichment, unfair competition and misappropriation of trade secrets under the laws of the State of New York, for violation of the California Computer Data Access and Fraud Act under the laws of the State of California and for violation of the federal Defense of Trade Secrets Act.

## PARTIES

2. Plaintiff Leopard Solutions is a New York corporation with an office at 37 West 39th Street, Suite 301, New York, NY 10018.

3. Upon information and belief, Love is an individual and resident of California. Upon information and belief, he is also the Director of Product at Legalist and the moving, active, conscious force behind the wrongful conduct alleged herein.

4. Upon information and belief, Legalist is a Delaware corporation with a principal place of business at 880 Harrison Street, San Francisco, CA 94107.

5. Leopard Solutions is currently unaware of the true names and identities of Defendants XYZ Companies 1-10 and John or Jane Does 1-10, but is informed and believes that such persons and entities are liable for the violations alleged in this Complaint. Leopard Solutions may seek leave to amend this Complaint at an appropriate time to add specific information regarding these defendants upon determination of their true identities.

27340/015/3957481.1

**JURISDICTION AND VENUE**

6.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 *et seq.*  This Court has supplemental jurisdiction over the claims arising under the laws of New York and California pursuant to 28 U.S.C. § 1367.

7.      This Court also has original jurisdiction pursuant to 28 U.S.C. § 1332 *et seq.* because this action is between citizens of different states and the amount in controversy exceeds $75,000.

8.      Personal jurisdiction exists under NY CPLR § 302 over Defendants who have committed the acts complained of herein, including tortious acts, within the New York State and have caused injury to Plaintiff in New York State. Defendants have also entered into contracts and transacted business in New York State, and Defendants' activities were purposeful and there is a substantial relationship between the transactions with Plaintiff and the claims asserted herein.  In the alternative, the Court also has personal jurisdiction under NY CPLR § 302 over Defendants pursuant to a contractual forum selection and jurisdiction clause.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)-(c) because Plaintiff is a New York limited liability company with its principal place of business in New York, and a substantial part of the events giving rise to the claims occurred in New York.

**FACTUAL BACKGROUND**

*Background Regarding Leopard Solutions*

1.      Leopard Solutions is a business intelligence platform and information service provider that offers information on law firms, attorneys and the legal industry to individuals and businesses in the legal field (the "Content").  The core of Leopard Solutions' Content is *The Leopard List*, an extensive database of biographical information on attorneys for use for business

3

development and recruiting purposes. Leopard Solutions uses proprietary software and confidential, internal protocols to operate Leopard Solutions' database platform and provides cutting edge software products and tools for business intelligence analysis.

2. Leopard Solutions' Content is extremely comprehensive and has been developed at great cost and expense over many years. The Content is constantly updated and edited to meet Leopard Solutions' standards and includes historical information regarding attorneys and firms that has been developed and maintained by Leopard Solutions for over a decade. The Content is Leopard Solutions most valuable asset and represents the collective intelligence of Leopard Solutions' members and employees working for many years to identify, acquire, select, arrange, sort, edit and annotate information on attorneys, law firms and the legal industry ("Leopard Solutions' Proprietary Information").

3. Leopard Solutions is the owner of all trademarks, copyrights and other intellectual property used in connection with its services, software and Leopard Solutions' Proprietary Information.

4. Leopard Solutions licenses subscribers – typically legal recruiters, attorneys and law firms – to access and use Leopard Solutions' Proprietary Information for certain purposes. Legal recruiters typically use this information to match attorneys with job listings, and law firms and corporations typically use this information to seek talent and also for market research and competitive intelligence in the legal industry.

5. Depending on the subscription plan, subscribers are given access to Leopard Solutions' software system, consisting of its platform for accessing and searching Leopard Solutions' Proprietary Information, through an online portal located at Leopard Solutions' website at https://www.leopardsolutions.com ("Leopard Solutions' Website"). Access to Leopard

4

Solutions' software platform is protected through passwords and an authentication process. Once logged-in to Leopard Solutions' platform, subscribers can search for information using Leopard Solutions' interface and defined search parameters.

6. The cost of a subscription depends on the number of Authorized Users, the data to be accessed and the period of the subscription. Leopard charges additional fees for access through an API or other integration with a subscriber's system. Leopard also provides customized business intelligence reports and other data for a fee.

7. While certain information on individual attorneys may be publicly available from different sources, the comprehensive combination of current and historical information on attorneys and law firms as consolidated in Leopard Solution's Proprietary Information, and the form, mode, selection, configuration, presentation and expression thereof, and associated software and protocols, constitute trade secrets of Leopard Solutions ("Leopard Solutions' Trade Secrets").

8. Leopard Solutions works diligently to protect the integrity and security of its software platform and of Leopard Solutions' Proprietary Information and Leopard Solutions' Trade Secrets. Leopard Solutions employs technological measures, code-based barriers and other safeguards to prevent unauthorized access and intrusions into its software system including firewalls, anti-virus programming, audits and other measures. Access for Authorized Users is provided through protected passwords and an authentication process. Leopard Solutions' interface also limits the type and quantity of information that Authorized Users can access and download through their searches. In addition, Leopard Solutions enters into confidentiality and non-disclosure agreements with its subscribers, vendors, contractors and other third parties that restrict the disclosure, copying and use of Leopard Solutions' Proprietary Information.

9. Leopard Solutions' Website also contains Terms of Use and a Subscription Agreement that govern the use of Leopard Solutions Website by website visitors and access to its database.

10. Among other things, the relevant Terms of Use and Subscription Agreement on Leopard Solutions' Website prohibit:

- Mak[ing] unreasonable computer-generated inquiries or copies of the Content or engag[ing] in systematic, excessive or wholesale copying, printing and/or downloading of Content for the purpose of aggregating or storing the Content in an archival database for later retrieval or to otherwise circumvent the purposes or limitations of the Agreement; and
- download[ing] all or any part of the Services or Content to Client's customers or any third-party facilities or network to enable any sharing of all or any part of the Services or Content or any data, information or documentation derived therefrom, or otherwise make the Content available to any individual or entity that is not an Authorized User.

11. These agreements also state that:

- Client acknowledges and agrees that the Services and Content and the form, format, mode or method of compilation, selection, configuration, presentation or expression thereof, are the confidential, proprietary, and trade secret information, products, process and data of Company (the "Confidential Property"). Client shall receive and maintain the Confidential Property as a confidential disclosure and shall not disclose all or any part of the Confidential Property to any other person or entity, except as necessary to do so in order to receive or implement the Services and Content as permitted hereunder and in accordance with the terms of the Agreement; and
- To the fullest extent permitted or available under applicable law, Company hereby asserts and claims, and Client hereby recognizes and acknowledges, Company's ownership of all right, title and interest in and to the Confidential Property, the Services, the Content, and all related data, information and documentation, and the form, format, mode or method of compilation, selection, configuration, presentation or expression thereof, and any and all related copyright, patent, trademark, service mark and confidential proprietary and trade secret information and rights.

12. Due to the sophistication of Leopard Solutions' software platform and search functions, and the quality and depth of Leopard Solutions' Proprietary Information, Leopard

6

Solutions has grown from a small start-up established around 2005 to a leader in its field and is the premier source of information for legal recruiters, attorneys, law firms, law schools and the legal industry.  In fact, Leopard's cutting-edge product offerings are at the forefront of its industry.

*Love's Misappropriation of Leopard Solutions' Proprietary Information and Leopard Solutions' Trade Secrets*

13. Upon information and belief, Legalist is a litigation finance company, that, among other things, funds commercial lawsuits on behalf of plaintiffs.  While plaintiffs can directly apply to Legalist for funding, Legalist also reaches out to lawyers through emails and other means to solicit its services.

14. Upon information and belief, Legalist monitors docket sheets and new case filings to find attorneys who may be interested in its litigation funding services.  It also sends unsolicited email blasts to attorneys on a more general basis.  An example of an unsolicited email sent by Legalist to numerous attorneys pursuant to a recent marketing campaign is set forth below:

> Subject: [Attorney Name] - let me know?
>
> [Attorney Name] - even if you don't have a case right now in need of funding, would be awesome to connect in case funding becomes relevant in the future.

15. Upon information and belief, Legalist needs email addresses and other information on attorneys to conduct its email campaigns and find attorneys who might have an interest in Legalist's services. Information on attorneys in specific practice areas, for instance, attorneys who specialize in litigation, as well as information on attorneys in specific geographic regions, is extremely important to Legalist's marketing efforts. This type of information is exactly the sort of information that is found in Leopard Solutions' Proprietary Information and Leopard Solutions' Trade Secrets.

16.     Upon information and belief, Love is the Director of Product at Legalist. He has an extensive background in technology and artificial intelligence, something that he did not disclose to Leopard Solutions during their discussions.

17.     On or about August 4, 2021, Love contacted Leopard Solutions seeking a subscription to Leopard Solutions' software platform. He had discussions with Leopard Solutions' salespersons and claimed that he wanted to see how the software search engine in Leopard Solutions' software platform operated in order to make a purchasing decision.

18.     A free trial is a commonly utilized process wherein a prospective customer is allowed to preview or try out a product or service at no cost for a limited period of time to aid the customer in making a purchasing decision. A Free Trial is not a paid purchase, and the consumer is not permitted full access to or to take possession to the offered product or service in lieu of payment.

19.     Based on Love's representation that he needed to see how Leopard Solutions' software platform operated in order to make a purchasing decision, Leopard Solutions provided Love with access to its database platform on a free trial basis for 48 hours (the "Free Trial").

20.     Love was expressly told that he was not permitted to download any Content during the Free Trial, and Leopard Solutions granted him access its database platform and Leopard Solutions' Proprietary Content on that basis.

21.     At all relevant times, Leopard Solutions emphasized the proprietary and confidential nature of Leopard Solutions' Proprietary Content.

22.     Although Love represented that his intention was to see how Leopard Solutions' platform worked, his conduct was much more nefarious. Once Love gained access to Leopard

8

Solutions' software system, he concocted and engaged in a scheme to copy Leopard Solutions' Proprietary Information and Leopard Solutions' Trade Secrets by repeatedly and systematically downloading records over the 48-hour period of access. In fact, in a 2-day period Love copied over 250,000 records – an enormous portion of the records in Leopard Solutions' database.

23.     The manner in which Love downloaded Leopard Solutions' Proprietary Information was calculating and exacting and took extensive planning. Because Leopard Solutions' software system has a download restriction of 10,000 records, Love systematically searched for and downloaded batches of records that fell under that threshold.

24.     Love's searches were deliberate. He performed complicated searches and targeted specific data sets on specific individuals, as opposed to general information in a geographic region. This type of searching took advance effort and planning and was part of a scheme enacted by Love to misappropriate Leopard Solutions' Proprietary Information and Leopard Solutions' Trade Secrets without paying for them.

25.     It took an astonishing number of searches to stay under the threshold and take what Love took. To accomplish his scheme, Love engaged in non-stop searches for hours at a time.

26.     On August 16, 2021, Love conducted 58 discrete searches, each retrieving an average of 1000-2000 distinct records over a 4 ½ hour period, and took nearly 90,000 records.

27.     Upon information and belief, Love then spent the next day further formulating his scheme to target specific information that would benefit Love and Legalist commercially and to take even more records.

28.     On August 18, 2021, Love began downloading at 5:35 a.m. and continued until 11:30 a.m. He conducted over 100 searches and downloaded approximately 140,000 records in

9

batches that ranged from 500 – 2000 records. He then took a break and began downloading again for another 2 hours and took an additional 25,000-plus records, ending his conduct just as his access was about to expire. In total, Love spent 13 hours actively searching and downloading in several non-stop sessions that involved 160 different searches,

29.     As Love had determined, by keeping his search batches small, he was able to engage in excessive downloads and circumvent Leopard Solutions' download restrictions and also stay under Leopard Solutions' radar by not placing a large download in Leopard Solutions' queue. By so doing, Love was able to copy an enormous portion of Leopard Solutions' Proprietary Information.

30.     Leopard Solutions also had other free trials that occurred during the same time period as the Free Trial with Love. None of those other entities downloaded any records during their free trial.

31.     In a typical subscription, a user might conduct up to 5 searches a day. The number of records downloaded by Love during the 48-hour Free Trial exceeded more than any other subscriber has ever taken in several months' time, including large subscribers with more than 200 active users.

32.     Leopard Solutions' investment of time, energy, money and resources into Leopard Solutions' Proprietary Information and Leopard Solutions' Trade Secrets is substantial. Had Love and Legalist purchased from Leopard Solutions the degree of access and Content that they took, the cost would have been significantly higher than the typical subscription.

33.     Leopard Solutions' fee for non-subscribers on a per record basis is $1.00. At the very least, Love and Legalist would have been charged a fee of approximately $250,000 if they

had negotiated a payment for the Content that they took. However, given the excessive and extensive copying of Leopard Solutions' Proprietary Information and Leopard Solutions' Trade Secrets, Legalist and Love are now in a position to recreate Leopard Solutions' database as a whole, a platform worth millions of dollars.

34. Upon information and belief, Love and Legalist have utilized Leopard Solutions' Proprietary information to build and enhance their own database and marketing list. It would have taken significant time and expense for Love and Legalist to gather data on 250,000 individual attorneys on their own. It would have taken even more time and expense to clean up errors in the data collected and transform the data into a usable format. Further, Love and Legalist would not have been able to obtain the historical information contained in Leopard Solutions' Proprietary Information, as that information is not readily available through public sources. By taking Leopard Solutions' Proprietary Information, Love and Legalist were able to avoid the time and expense required to build their own database of information and instead used Leopard Solutions' Proprietary Information to gain a significant advantage over their competitors.

35. Upon information and belief, notwithstanding the confidentiality of Leopard Solutions' Proprietary Information, Love and Legalist have also shared the information with others for the purposes of capitalizing on Leopard Solutions' Proprietary Information and Leopard Solutions' Trade Secrets for personal and commercial gain.

36. Leopard Solutions' Proprietary Information is at risk of further dissemination to others.

37. Love's and Legalists' conduct was willful and intentional and conducted with malice.

38. Love was the conscious, moving active force in the misappropriation alleged herein. Further, Legalist is responsible for the misappropriation of Leopard Solutions' Proprietary Information by its agent, Love.

39. As a result of Defendants' actions, Leopard Solutions has been monetarily damaged in an amount to be determined at trial.

40. As a result of Defendants' wrongful conduct, Leopard Solutions has sustained, and will continue to sustain, immediate irreparable harm for which Leopard Solutions has no adequate remedy at law, and Defendants must be restrained to prevent further disclosure and harm to Leopard Solutions.

41. Leopard Solutions' investigation into Defendants' conduct is still ongoing and it is likely to find additional unauthorized access, intrusions, interference and data theft.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**
**As to Defendants Love and Legalist**

42. Plaintiff incorporates by reference herein the allegations in the above paragraphs 1 to 41 as though fully set forth herein.

43. An oral contract existed between Leopard Solutions and Love and Legalist that prohibited the downloading, use and disclosure of Leopard Solutions' Proprietary Information during the Free Trial.

44. Leopard Solutions fully performed its contractual obligations.

45. Love breached the contract by downloading Leopard Solutions' Proprietary Information and by using and disclosing Leopard Solutions' Proprietary Information to others.

46. As a result of Defendants' wrongful conduct, Leopard Solutions has been damaged and will continue to be damaged in an amount to be determined at trial but in any event not less than $250,000.

## SECOND CLAIM FOR RELIEF
### (Unjust Enrichment under New York common law)
### As to All Defendants

47. Plaintiff incorporates by reference herein the allegations in the above paragraphs 1 to 46 as though fully set forth herein.

48. Defendants' have wrongfully misappropriated Leopard Solutions' Proprietary Information and Leopard Solutions' Trade Secrets without Leopard Solutions' authorization at Leopard Solutions' expense and have been enriched thereby.

49. Defendants have profited from the misappropriated Leopard Solutions' Proprietary Information and Leopard Solutions' Trade Secrets by avoiding the significant expense involved in obtaining such information through legitimate means and have thereby obtained an advantage over competitors in an amount to be determined at trial but in any event not less than $250,000.

50. As a result of Defendants' wrongful conduct, Leopard Solutions has been damaged and will continue to be damaged in an amount to be determined at trial but in any event not less than $250,000.

51. It is against equity and good conscience to permit Defendants' to retain Leopard Solutions' Proprietary Information and Leopard Solutions' Trade Secrets without compensation to Leopard Solutions.

## THIRD CLAIM FOR RELIEF
### (Misappropriation of Trade Secrets under New York common law)
### As to Defendants Love and Legalist

52. Plaintiff incorporates by reference herein the allegations in the above paragraphs 1 to 51 as though fully set forth herein.

53. At all times relevant hereto, Leopard Solutions exercised reasonable efforts to maintain the confidentiality and secrecy of Leopard Solutions' Trade Secrets by among other things, limiting subscribers' access to Leopard Solutions' Trade Secrets except on an authorized and confidential basis and maintaining certain technological safeguards to prevent unauthorized access to Leopard Solutions' Trade Secrets.

54. Leopard Solutions' Trade Secrets derive independent economic value from not being generally known to or readily ascertainable through proper means by another person who can obtain economic value from the disclosure and use of such information, and they have conferred a competitive advantage to Leopard Solutions over others in the legal information services industry.

55. Defendants have willfully and maliciously misappropriated Leopard Solutions' Trade Secrets in violation of New York law.

56. Defendants have profited from the misappropriated Leopard Solutions' Proprietary Information and Leopard Solutions' Trade Secrets by avoiding the significant expense involved in obtaining such information through legitimate means and have obtained an advantage over competitors in an amount to be determined at trial but in any event not less than $250,000.

57. As a result of Defendants' wrongful conduct, Leopard Solutions has been damaged and will continue to be damaged in an amount to be determined at trial but in any event not less than $250,000.

58. As a result of Defendants' wrongful conduct, Leopard Solutions has sustained, and will continue to sustain, immediate irreparable harm.

## FOURTH CLAIM FOR RELIEF
### (Violation of the Defense of Trade Secrets Act, 18 U.S.C. § 1836 et seq.)
### As to Defendants Love and Legalist

59. Plaintiff incorporates by reference herein the allegations in the above paragraphs 1 to 58 as though fully set forth herein.

60. Leopard Solutions is the owner of Leopard Solutions' Trade Secrets.

61. Leopard Solutions' Trade Secrets are related to Leopard Solutions' services, which are sold in interstate commerce.

62. Leopard Solutions' Trade Secrets derive independent economic value from not being generally known to or readily ascertainable through proper means by another person who can obtain economic value from the disclosure and use of such information, and they have conferred a competitive advantage to Leopard Solutions over others in the legal industry.

63. Defendants have misappropriated Leopard Solutions' Trade Secrets in violation of the Defense of Trade Secrets Act by improper means and without authorization.

64. Defendants have profited from the theft of Leopard Solutions' Trade Secrets by avoiding the significant expense involved in obtaining the information contained in Leopard Solutions' Trade Secrets through legitimate means and by obtaining an advantage over their competitors in an amount to be determined at trial but in any event not less than $250,000.

65. As a result of Defendants' wrongful conduct, Leopard Solutions has been damaged and will continue to be damaged in an amount to be determined at trial but in any event not less than $250,000.

66. As a result of Defendants' wrongful conduct, Leopard Solutions has sustained, and will continue to sustain, immediate irreparable harm.

## FIFTH CLAIM FOR RELIEF
### (Violation of California Computer Data and Fraud Act)
### As to Defendants Love and Legalist

67. Plaintiff incorporates by reference herein the allegations in the above paragraphs 1 to 66 as though fully set forth herein.

68. Love knowingly accessed Leopard Solutions' computer system, and, without permission, downloaded, copied and used Leopard Solutions' data, including Leopard Solutions' Proprietary Information and Leopard Solutions' Trade Secrets, and circumvented technical and code-based barriers in place to restrict the copying and downloading of Leopard Solutions' Proprietary Information and Leopard Solutions' Trade Secrets.

69. Love knowingly accessed Leopard Solutions' computer system and, without permission took, copied and made use of data from Leopard Solutions' computer system.

70. Love's actions were conducted in order to execute a scheme or artifice to defraud or deceive Leopard Solutions and/or wrongfully obtain Leopard Solutions' data.

71. Love's actions were conducted with fraud or malice.

72. Love's actions were conducted on his own behalf and on behalf of Legalist.

73. As a result of Defendants' wrongful conduct, Leopard Solutions has been damaged and will continue to be damaged.

74. As a result of Defendants' wrongful conduct, Leopard Solutions has sustained, and will continue to sustain, immediate irreparable harm.

75. Love's conduct violated Cal. Pen. Code, § 502(c).

76. As a result of the above, Plaintiff is entitled to damages, exemplary damages, punitive damages, attorneys' fees and other relief.

### SIXTH CLAIM FOR RELIEF
**(Breach of Terms of Use and Subscription Agreement)**
**As to Love and Legalist**

77. Plaintiff incorporates by reference herein the allegations in the above paragraphs 1 to 76 as though fully set forth herein.

78. In the alternative, Leopard Solutions' Terms of Use and Subscription Agreement on its website governs access to and use of Leopard Solutions' Proprietary Information.

79. Leopard Solutions fully performed its contractual obligations.

80. Defendants have breached Leopard Solutions' Terms of Use and Subscription Agreement.

81. As a result of Defendants' wrongful conduct, Leopard Solutions has been damaged and will continue to be damaged in an amount to be determined at trial but in any event not less than $250,000.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants and respectfully requests that:

1. The Court grant judgment in favor of Plaintiff and against all Defendants on all of Plaintiff's claims;

2. The Court issue a permanent injunction against all Defendants, their officers, agents, subsidiaries, servants, partners, employees, attorneys, and all others in active concert or participation with them:

    a.    requiring Defendants to return all of Leopard Solutions' Proprietary Information and Leopard Solutions' Trade Secrets;

    b.    enjoining Defendants from using or disclosing Leopard Solutions' Proprietary Information and Leopard Solutions' Trade Secrets to any party, at any time, and for any reason;

    c.    requiring Defendants to provide an accounting of the whereabouts of Leopard Solutions' Proprietary Information and Leopard Solutions' Trade Secrets, including all files, data, information removed, downloaded, transferred or forwarded to any third parties,

    d.    requiring Defendants to delete all Content obtained from Leopard Solutions anywhere it may reside, including the computer system and servers of any of the Defendants or on any other computer, electronic device, or cloud accounts, hard copy documents, or any other materials in Defendants' possession, custody, or control;

    e.    requiring Defendants to provide written certification to Leopard Solutions' counsel of their compliance with paragraph (d) above; and

    f.    requiring Defendants to permit inspection by Leopard Solutions or a forensic computer expert selected by Leopard Solutions, of any such devices to confirm deletion of Leopard Solutions' Proprietary Information and Leopard Solutions' Trade Secrets in accordance with the above, at Defendants' expense.

3.    The Court award Leopard Solutions a judgment against all Defendants on the above claims in an amount of damages as may be proven at trial, but in no case less than 5 MILLION

DOLLARS, including the disgorgement of any profits, benefits, or compensation received as a result of Defendants' misconduct, and allowing the recovery of punitive damages and legal fees, as may be appropriate;

      4.      The Court award Leopard Solutions statutory damages;

      5.      The Court award Leopard Solutions exemplary damages, punitive damages and attorneys' fees pursuant to Cal. Pen. Code, § 502(e)(2), 18 U.S.C. § 1836 et seq and other applicable law;

      6.      The Court award Leopard Solutions costs, and pre-and post-judgment interest as applicable; and

      7.      The Court grant Plaintiff such other and further relief as the Court deems just, equitable, and proper.

Dated:  December 2, 2021
          New York, New York

Respectfully submitted,

COWAN, LIEBOWITZ & LATMAN, P.C.

  */s/ Meichelle R. MacGregor*
Meichelle R. MacGregor (mrm@cll.com)
Jeremy A. Berman (jab@cll.com
114 West 47th Street
New York, New York 10036
(212) 790-9200

*Attorneys for Plaintiff Leopard Solutions LLC*

27340/015/3957481.1